UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JAMES EDWARD GOUBEAUX, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00205-JMS-DLP |
| | ) |
| NICOLE DAVIS, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff James Goubeaux is a prisoner at New Castle Correctional Facility. This civil rights action is proceeding with claims that the defendants were deliberately indifferent to Mr. Goubeaux's medical needs after he was seriously injured at Putnamville Correctional Facility (PCF) in 2018.

The defendants have moved for summary judgment on the basis that Mr. Goubeaux failed to exhaust available administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons discussed below, the Court **denies** the defendants' motion for summary judgment, dkt. [33], and orders them to **show cause** why the Court should not grant Mr. Goubeaux summary judgment on the exhaustion defense.

**I. Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find

for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

In accordance with Local Rule 56-1(f), the Court assumes that facts properly supported by the movant are admitted without controversy unless the nonmovant specifically disputes them. Likewise, the Court assumes that facts asserted by the non-movant are true so long as they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(2).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022,

1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movants, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Goubeaux. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Facts

Mr. Goubeaux was injured on October 19, 2018, while trying to open a window at the direction of a guard at PCF. Dkt. 39-1 at ¶ 3. Mr. Goubeaux's right hand broke through the glass. *Id.* The glass cut his right arm and wrist and damaged his tendons, arteries, and nerves. *Id.* He bled so much that a nurse had to apply a tourniquet. *Id.* at ¶¶ 3–4.

An ambulance transported Mr. Goubeaux from PCF to Terre Haute Regional Hospital. *Id.* at ¶¶ 4–5. A neurosurgeon attempted to repair the damage to Mr. Goubeaux's nerves, tendons, and arteries. *Id.* at ¶ 5. However, Mr. Goubeaux—who is right-handed—continues to have a difficult time using his right hand. *Id.* at ¶ 6.

Mr. Goubeaux remained hospitalized for six days. *Id.* at ¶ 7. On October 24, he did not return to PCF but was transferred to Wabash Valley Correctional Facility (WVCF) to recuperate in the infirmary. *Id.* When Mr. Goubeaux arrived at WVCF, he "was still in a lot of pain and was

heavily medicated with painkillers." *Id.* at ¶ 7. He returned to PCF in early January 2019. *Id.* at ¶ 13.

At this time, the Indiana Department of Correction (IDOC) maintained an Offender Grievance Process (OGP). Dkt. 35-2. The OGP permitted inmates to seek resolutions to numerous issues, including "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care." *Id.* at § IV(A). No exception is provided for concerns relating to medical care. *Id.* at § IV(B).

To exhaust the remedies available through the OGP, an inmate must complete four steps. *See id.* at §§ X–XIII. There is no dispute that Mr. Goubeaux never proceeded beyond the first step in the OGP. As such, the Court need not discuss the requirements for completing the third and fourth steps in the OGP, which concern appeals.

At the first step in the process, the inmate must attempt to resolve his concern informally by discussing it "with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs." *Id.* at § X. An inmate must document his attempt to resolve the complaint informally. *Id.* He may do so by completing a "Request for Interview" form. *Id.*

If the inmate is unable to achieve a satisfactory informal resolution, he must proceed to the second step and submit a formal grievance. *Id.* at § XI. A formal grievance must be presented on State Form 45471. *Id.* Moreover, it must be submitted within 10 business days of the date giving rise to the complaint or concern. *Id.*

Mr. Goubeaux states that he "did not know the rules or details" of the OGP, or have a written copy of the OGP, while he was confined in the WVCF infirmary. Dkt. 39-1 at ¶ 8. He

4

completed a Request for Interview on November 21, 2018—more than a month after he was injured. Dkt. 39-2. Mr. Goubeaux's Request for Interview states:

> I need to file a grievance with Putnamville State Farm over the incident with my hand. C/O asked me to open a window, my hand went through it. He realized it was painted on the outside after my hand went through. He assumed it was stuck after the fact. *I will need form so I can forward this and the form to the grievance specialists.*

*Id.* (emphasis added).

Mr. Goubeaux did not receive a response to his November 21 Request for Interview. He submitted a second, similar request eight days later. Dkt. 39-3. In addition to stating that he needed to file a grievance regarding his injury, Mr. Goubeaux stated:

> I was told this has to be mailed to Putnamville. Could you please forward to there.
> I sent one on the 21st. This needs to get some action taken please.

*Id.* Ms. Coakley responded and told Mr. Goubeaux that he should submit all his materials to the grievance specialist, who would "send all documentation to the appropriate person electronically." *Id.* Mr. Goubeaux never filed a formal grievance regarding his hand injury.

Two IDOC officials have presented affidavits stating that, as a matter of practice, inmates receive either a copy of the OGP or instructions about how to access the OGP every time they arrive at a new IDOC facility. Dkt. 35-1 at ¶ 6; dkt. 35-4 at ¶ 6. At WVCF, inmates may access the OGP in the law library. Dkt. 35-4 at ¶ 6. The defendants have not presented any evidence from an individual with personal knowledge of the following issues:

- What information Mr. Goubeaux received regarding the OGP when he arrived at the WVCF infirmary.

- Whether Mr. Goubeaux had access to State Form 45471 while he was in the WVCF infirmary.

- Whether Mr. Goubeaux was able to visit the WVCF law library while he was confined to the infirmary.

5

- When, after his release from the hospital, Mr. Goubeaux became physically able to write a formal grievance.

### III. Analysis

The defendants seek summary judgment on grounds that Mr. Goubeaux never proceeded beyond the informal resolution stage of the OGP. There is no dispute that Mr. Goubeaux never filed a formal grievance and therefore never exhausted the OGP. However, the evidence also shows beyond dispute that the OGP was not "available" to Mr. Goubeaux.

**A.    Physical Inability**

The OGP required Mr. Goubeaux to file a formal grievance on State Form 45471 by November 1, 2018. These requirements, Mr. Goubeaux's physical condition, and his confinement to the infirmary made the OGP unavailable to Mr. Goubeaux.

"[A] remedy is not 'available' within the meaning of the [PLRA] to a person physically unable to pursue it." *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). The tendons, nerves, and arteries in Mr. Goubeaux's writing hand were so seriously injured on October 19, 2018, that he still has trouble using that hand today. Dkt. 39-1 at ¶¶ 3–6. When he arrived at the WVCF infirmary on October 24, he "was still in a lot of pain and was heavily medicated with painkillers." *Id.* at ¶ 7. When he eventually submitted a Request for Interview on November 21, he had to ask someone else to write it for him because he was unable to write on his own. *Id.* at ¶ 10. This unrebutted evidence all indicates that Mr. Goubeaux was physically incapable of writing a formal grievance by November 1, 2018, as the OGP required.

In *Lanaghan v. Koch*, the Seventh Circuit recently considered the case of an inmate who "faced severe physical limitations during" the period in which he was required to file a grievance. 902 F.3d 683, 688–689 (7th Cir. 2018). Like Mr. Goubeaux, Lanaghan "could not fill out the form himself because he was unable to use his hands sufficiently to fill in the form." *Id.* at 689.

6

Additionally, the nature of his condition and his hospitalization shortly thereafter indicated that he "had little physical stamina at the time" and could not wait for another inmate to assist him. *Id.* The Seventh Circuit found that the defendants failed to point to any evidence showing that Lanaghan was physically able to complete a written grievance on his own or to obtain assistance from someone else. *Id.*

So too in this case. The only evidence in the record indicates that Mr. Goubeaux was not capable of writing a formal grievance by the November 1 deadline. "Accordingly, the factual findings in this case do not establish that a remedy was available to [Mr. Goubeaux] that he failed to pursue." *Lanaghan*, 902 F.3d at 689.

The defendants assert that Mr. Goubeaux's deadline to file a formal grievance was "tolled" until November 17, 2018, because of his hospitalization. Dkt. 41 at 2–3. But the OGP does not feature a "tolling" provision applicable to this case. The defendants note that Section XV(B) of the OGP grants inmates twenty business days (as opposed to the usual ten) after being transferred to file a grievance "against a former facility." *See id.* at 3 However, this provision applies only to grievances "regarding transfer of property or funds." Dkt. 35-2 at § XV(B).

The defendants also assert in a footnote that Mr. Goubeaux "could have sought an extension in which to commence his filing of grievances" but did not do so. Dkt. 41 at 3 n.2. The defendants support this one-sentence argument with a citation to the following passage from the OGP:

> If there are extenuating circumstances which caused the offender a delay in submitting the grievance form within the time frames, the offender must document and submit the reason for the delay on a separate piece of paper with signature and date, and include with the appropriate appeal form or make a request for the specific form to the Offender Grievance Specialist for review.

Dkt. 35-2 at § XIV(A).

If this passage is intended to convey that an inmate who misses a grievance deadline still must attempt to file the grievance late, it does not do so clearly. Indeed, it is not even clear that

7

Section XIV(A) applies to any portion of the OGP but the appeals process, given that the inmate must include documentation for the reason for his delay "with the appropriate appeal form." *Id.* The Court cannot "discern or navigate" this passage and would not expect an "ordinary prisoner" to do any better. *Ross*, 136 S. Ct. at 1859. The Court finds this provision of the OGP "so opaque" that it is, "practically speaking, incapable of use." *Id.* And by failing to offer any explanation whatsoever, the defendants have waived any argument to the contrary. *See, e.g.*, *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotations omitted)); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make Connor's case for him."); *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material.").

**B.     Availability of Forms**

The evidence demonstrates beyond dispute that the OGP was unavailable to Mr. Goubeaux for another, related reason: He was unable to access State Form 45471, the form on which the OGP required him to submit his formal grievance.

"[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting *Dale*, 376 F.3d at 656); *see also Dale*, 376 F.3d at 656 ("The defendants have yet to give any reason why Dale was refused the forms he requested, or to explain

8

how he could use the administrative grievance system without the forms mandated for that purpose.").

The OGP required Mr. Goubeaux to submit his formal grievance using State Form 45471. Dkt. 35-2 at § XI ("An offender wanting to submit a grievance . . . *shall submit* a completed State Form 45471 . . . .) (emphasis added). The OGP provides no alternative mechanism for filing a formal grievance.

Mr. Goubeaux has presented evidence indicating that he did not have access to State Form 45471 while confined to the WVCF infirmary. His first informal grievance, dated November 21, 2018, states, "I will need form so I can forward this and the form to the grievance specialists." Dkt. 39-2. The OGP required Mr. Goubeaux to file a formal grievance on State Form 45471 by November 1, 2018. But the informal grievance indicates that he still did not have access to State Form 45471 three weeks after that deadline.

The defendants have not provided any evidence rebutting this conclusion. The defendants have presented testimony from a WVCF grievance specialist stating that, as a matter of practice, inmates are provided information about the OGP upon their arrival at WVCF and that they may access a copy of the OGP in the law library. Dkt. 35-4 at ¶ 6. But this testimony does not indicate that Mr. Goubeaux was provided a copy of State Form 45471 at any point during his confinement at WVCF or that copies were generally available in the infirmary. It does not indicate that State Form 45471 was available in the law library—much less that Mr. Goubeaux was able to leave the infirmary and obtain a grievance form from the law library.

### IV. Conclusion and Further Proceedings

"Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas*, 787 F.3d

9

at 847. For the reasons discussed in Part III above, the defendants have failed to establish that the OGP was available to Mr. Goubeaux. Their motion for summary judgment, dkt. [33], is therefore **denied**.

Additionally, as noted above, Mr. Goubeaux has presented evidence supporting the conclusion that the OGP was not available to him. The Court previously issued the following warning to the defendants:

> [I]f the defendants file a dispositive motion, they must remember that it is their burden to prove both that the administrative remedy process was available to the plaintiff and that he or she failed to utilize it. *See Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). Thus, if the plaintiff responds with evidence that the administrative remedy process was unavailable, the defendants may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the defendants' reply must directly confront the plaintiff's evidence regarding availability and explain why they remain entitled to summary judgment despite that evidence. *Failure to present responsive evidence in reply will result in a forfeiture of any right to present that evidence if there is a future* Pavey *hearing.*

Dkt. 32 at 2 (emphasis added). In failing to present responsive evidence regarding Mr. Goubeaux's access to the grievance process, the defendants have forfeited their right to do so at a *Pavey* hearing. The factual record shows that the grievance process was unavailable to Mr. Goubeaux, and that record will not change.

Accordingly, the Court notifies the defendants of its intent to grant summary judgment in Mr. Goubeaux's favor on the exhaustion defense. The defendants shall have **through May 26, 2020**, to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Mr. Goubeaux's favor, or (b) withdraw their affirmative defense of exhaustion.

**IT IS SO ORDERED.**

Date: 5/12/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JAMES EDWARD GOUBEAUX, JR.
223811
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box A
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Robert Peter Kondras, Jr.
HASSLER KONDRAS MILLER LLP
kondras@hkmlawfirm.com

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com